UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| OUATI K. ALI,<br><br>         Plaintiff,<br><br>v.<br><br>KELLI WEST, MICHELLE HAESE, KELLY SALINAS, ALAN DEGROOT, CINDY O'DONNELL, SCOTT ECKSTEIN, and MICHAEL DONOVAN,<br><br>         Defendants. | Case No. 16-CV-1518-JPS<br><br><br><br>**ORDER** |

  On December 19, 2016, the Court screened Plaintiff's original complaint. (Docket #8). The Court found that Plaintiff failed to state any viable claims for relief, but it permitted him to amend his complaint. *Id.* at 6–7. Plaintiff submitted an amended complaint on December 29, 2016. (Docket #9).

  As noted in the first screening order, the Court is required to screen complaints brought by prisoners seeking relief against a governmental entity or officer or employee of a governmental entity. 28 U.S.C. § 1915A(a). The Court must dismiss a complaint, or portion thereof, if the prisoner has raised claims that are "frivolous or malicious," that fail to state a claim upon which relief may be granted, or that seek monetary relief from a defendant who is immune from such relief. *Id.* § 1915A(b). All of the standards cited in the first screening order remain applicable here. (Docket #8 at 1–3).

To show why Plaintiff's amended allegations largely fail to correct his prior errors, the Court will relate them in detail. Initially, Plaintiff describes the jobs and authority of each of the named defendants. Defendant Kelli West ("West") is the Religious Coordinator for the Wisconsin Department of Corrections and, in that capacity, she is allegedly "responsible for the overall operations of the department and each institution under its jurisdiction, including Green Bay Correctional Institution," the prison where Plaintiff is incarcerated. (Docket #9 at 2). Defendant Michelle Haese ("Haese") is the Institution Social Service Director. *Id.* She is "responsible for the over all operations of the institution" and she "executes its policy." *Id.* Defendant Kelly Salinas ("Salinas") is a Corrections Complaint Examiner and is "responsible for overseeing the overall operations of the department's complaint division and each institution under its jurisdiction." *Id.* Defendant Alan DeGroot ("DeGroot") is the Institution Complaint Examiner at Plaintiff's prison. *Id.* He is "responsible for its day-to-day operations and executes its policies as it pertains to inmate grievances." *Id.* Defendant Cindy O'Donnell ("O'Donnell") is the Secretary of the Office of the Wisconsin Department of Corrections, and she is "responsible for its day-to-day operations and executes its policies as it pertains to inmate grievances for the state of Wisconsin." *Id.* Defendant Scott Eckstein ("Eckstein") is the warden of the prison where Plaintiff is housed and is "responsible for the day-to-day operations and executes its policies." *Id.* Finally, Defendant Michael Donovan is the chaplain at Plaintiff's prison and is "responsible for the day-to-day operations and executes its policies." *Id.* at 3.

In his amended complaint, Plaintiff alleges that on or around March 29, 2016, a fellow inmate instructed him to submit a request to the prison's Chapel Services department for provision of the "Eid Meal," which the Court interprets as the special meal eaten during the Eid-al-Fitr feast at the close of the Muslim holy month of Ramadan. (Docket #9 at 4).[1] That same date, he "forwarded to be placed on the list for the Ramadan Participation that was to began [sic] June 6, 2016." *Id.*

On April 4, 2016, Donovan sent Plaintiff a "New Religious Practice or Property" form. *Id.* Plaintiff alleges that this "was the incorrect form." *Id.* He further alleges that Donovan never acknowledged whether Plaintiff had been placed on the list for Ramadan participation as he had requested. *Id.* On April 5, 2016, Plaintiff sent an interview/information request to Donovan, asking if he had been added to the list for Ramadan participation. *Id.* at 4–5. Donovan replied on April 13, 2016, stating in part that "[t]he deadline to sign up for Ramadan was April 7, 2016. . .and management would not allow him to put a memo on channel 8, posting a deadline date." *Id.* at 5.

On or around April 15, 2016, Plaintiff, along with a fellow Muslim inmate, were en route to the dining facility when they crossed paths with Donovan. *Id.* Plaintiff asked Donovan again whether he had been placed on the "Ramadan list." *Id.* Donovan responded that he would not place Plaintiff's name on the list and that Plaintiff should write to Haese. *Id.*

Plaintiff did so on April 15, 2016, sending Haese "an Interview/Information Request attached with Donovan's response." *Id.*

---

[1] He does not state that he ever actually submitted such a request, only that another inmate advised him to do so.

Plaintiff does not further describe what he wrote in this request to Haese. *See id.* She responded on some later date, saying "[b]e patient, I am trying to resolve the problem." *Id.* On April 18, 2016, Plaintiff filed an inmate grievance which "presented facts relating to [the amended] complaint." *See id.* at 3. He provides no further details as to the contents of that grievance. *See id.*

On or around April 22, 2016, Plaintiff, along with two other inmates, met with Eckstein and prison security director Kind (whose first name is not given). *Id.* at 5. Plaintiff claims that he and his associates questioned Eckstein and Kind regarding being denied participation in the 2016 Ramadan fast. *Id.* The inmates voiced concern that they "were not notified of the 2016 Ramadan by channel 8 bulletin and how the institution never notified inmates of this change in policy." *Id.* According to Plaintiff, Eckstein "agreed that the new system was not working, for there had been other inmates complaining of not being notified." *Id.* Eckstein "assured [the inmates] that he [would] look into the issue" and follow up with them. *Id.*

On May 11, 2016, the complaint examiner dismissed Plaintiff's April 18 complaint, which Plaintiff appealed on May 20. *Id.* at 3. On June 14, 2016, the dismissal was affirmed by the corrections complaint examiner. *Id.* Plaintiff received notice of this decision on July 13, 2016. *Id.* at 4.

Based on these facts, Plaintiff alleges two claims for deprivation of his constitutional rights pursuant to 42 U.S.C. § 1983. *Id.* at 6. First, Defendants violated his right to the free exercise of his religion under the First Amendment when they denied him participation in the Ramadan fast. *Id.* Second, Defendants violated his due process rights under the Fourteenth

Page 4 of 12

Case 2:16-cv-01518-JPS   Filed 01/17/17   Page 4 of 12   Document 10

Amendment when they "deprived him of his liberty to practice his religion without government interference." *Id.*

Plaintiff's amended complaint generally fails to state claims upon which relief may be granted. The Court will discuss each of Plaintiff's specific claims in turn, but first, it should be noted that the amended complaint omits several details which were included in the original complaint. Plaintiff was expressly instructed in the Court's original screening order that his amended complaint "supersedes the prior complaint and must be complete in itself without reference to the original complaint." (Docket #8 at 7) (citing *Duda v. Bd. of Educ. of Franklin Park Pub. Sch. Dist. No. 84*, 133 F.3d 1054, 1056–57 (7th Cir. 1998)). Plaintiff's failure to both replicate his prior allegations and improve upon them is the source of many of the deficiencies described below.

1.     **FREE EXERCISE CLAIM**

To prevail on a claim that Defendants, by denying him participation in the Ramadan fast, deprived Plaintiff the right to the free exercise of his religion, Plaintiff must allege facts showing that the prison officials in question "personally and unjustifiably placed a substantial burden on his religious practices." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016); *Conyers v. Abitz*, 416 F.3d 580, 585 (7th Cir. 2005). A burden is "substantial" when it "put[s] substantial pressure on an adherent to modify his behavior and to violate his beliefs," *Thomas v. Review Bd.*, 450 U.S. 707, 717–18 (1981), or where it forces a person to "choose between following the precepts of her religion and forfeiting [governmental] benefits, on the one hand, and abandoning one of the precepts of her religion. . .on the other hand," *Sherbert*

*v. Verner*, 374 U.S. 398, 404 (1963). A burden is "unjustified" if it is not reasonably related to a legitimate penological interest. *Turner v. Safley*, 482 U.S. 78, 89–91 (1987). A rule that is "neutral and of general applicability need not be justified by a compelling governmental interest even if [it] has the incidental effect of burdening a particular religious practice." *Church of Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993); *Koger v. Bryan*, 523 F.3d 789, 796 (7th Cir. 2008).[2]

Under the applicable standards, Plaintiff has stated a claim for violation of his free exercise rights against the prison chaplain, Donovan, the program director, Haese, and the warden, Eckstein. It appears that Donovan ignored Plaintiff's timely request to be placed on the list for Ramadan participation and then denied his follow-up request as untimely. A free exercise claim under Section 1983 requires that the prison official in question act intentionally, not merely negligently, in placing a burden on the inmate's religious exercise. *Lovelace v. Lee*, 472 F.3d 174, 201 (7th Cir. 2006). Although Donovan might proffer evidence showing that his failure to timely register Plaintiff for Ramadan participation was not intentional, Plaintiff's allegations, taken as true, suffice to state a claim at the screening stage against Donovan. Likewise, although Plaintiff fails to actually state that Haese denied his request to participate in Ramadan, the Court can infer as much through a generous construction of his existing allegations. After she is served, Haese

---

[2]Of course, the free exercise right, enshrined in the First Amendment, is applicable to state penal institutions only through the Due Process Clause of the Fourteenth Amendment. *See Cantwell v. Connecticut*, 310 U.S. 296, 303 (1940). Thus, Plaintiff's free exercise claim arises not under the First Amendment but under the Fourteenth.

can argue that any such denial was unintentional or was justified by prison policy.

Finally, although it is a close question, the Court finds that Plaintiff's allegations pass the screening stage with respect to warden Eckstein. Donovan told Plaintiff that "management" prohibited him from notifying inmates of the Ramadan sign-up deadline via the "channel 8 bulletin"—which the Court previously surmised is some sort of intra-prison notification system. The Court assumes here that Eckstein, as the warden, made this decision. This is corroborated by Plaintiff's later conversation with Eckstein, in which Eckstein admits that he had implemented a different system to replace "channel 8." The implementation of that new system, and the refusal to permit use of the "channel 8" system, may easily be justified as having general applicability despite their incidental effects on Plaintiff's religious exercise. *See Church of Lukumi Babalu*, 508 U.S. at 531. Yet at this early juncture, the Court will permit the claim to proceed.

The same is not true, however, for any of the other defendants. Although named as defendants in this case, Plaintiff's factual allegations do not touch upon West, Salinas, DeGroot, or O'Donnell. Section 1983 creates a cause of action based on personal liability and predicated upon fault; thus, "to be liable under [Section] 1983, an individual defendant must have caused or participated in a constitutional deprivation." *Pepper v. Village of Oak Park*, 430 F.3d 809, 810 (7th Cir. 2005) (citations omitted). Liability may also attach to acts that occur with a government official's consent. *Brokaw v. Mercer Cnty.*, 235 F.3d 1000, 1012 (7th Cir. 2000); *Gentry v. Duckworth*, 65 F.3d 555, 561 (7th Cir. 1995) (officials are liable for another's constitutional violation only where

they know of it, condone it, approve it, facilitate it, or turn a blind eye toward it). Because personal involvement is required for liability to attach, the *respondeat superior* doctrine—supervisor liability—is not applicable to Section 1983 actions. *Sanville v. McCaughtry*, 266 F.3d 724, 740 (7th Cir. 2001).

Thus, these defendants cannot be liable for any other prison employee's constitutional violations. With respect to West, the Court presumes that Plaintiff added her as a defendant because he believes that she, as a supervisor for religious services provided in Wisconsin prisons, is responsible for Donovan's or Haese's conduct. This is not so, and, absent any allegations that she personally participated or even knew about their conduct at the time it occurred, Plaintiff states no claim against her. Similarly, to the extent Plaintiff seeks supervisory liability against Haese based on Donovan's actions, or against Eckstein for the actions of any other prison employee, these theories must fail.

As to Salinas, DeGroot, and O'Donnell, these individuals deal with inmate grievances in various capacities. The Court might presume that they were involved in the disposition Plaintiff's grievance of April 18, 2016, though he does not say this in his amended complaint. Yet this alone does not create a First Amendment claim against these officials. Plaintiff gives no specifics as to what issues the April 18 grievance raised or how any examiner or reviewing authority investigated and disposed of it. As noted above, the Court cannot co-opt Plaintiff's more detailed allegations regarding these defendants from his initial complaint into his amended complaint. *Duda*, 133 F.3d at 1056–57. As such, Plaintiff's potential First Amendment claims against West, Salinas, DeGroot, and O'Donnell are without merit.

Page 8 of 12

Case 2:16-cv-01518-JPS   Filed 01/17/17   Page 8 of 12   Document 10

## 2. DUE PROCESS CLAIM

As for Plaintiff's due process claim, its contours are somewhat unclear. Does Plaintiff believe that denial of participation in Ramadan constitutes a denial of due process separate and apart from any free exercise violation? *See* (Docket #9 at 6). Or does he instead challenge the denial of his April 2016 inmate grievance as a violation of his right to due process? He does not say, but his allegations do not state a due process claim under any theory.

When a prisoner makes a due process claim, it is important to define with precision the nature of the claim being raised. This is because the Due Process Clause of the Fourteenth Amendment is the source of three separate constitutional protections. The Supreme Court has explained:

> First, the Clause incorporates many of the specific protections defined in the Bill of Rights. A plaintiff may bring suit under § 1983 for state officials' violation of his rights to, *e.g.*, freedom of speech or freedom from unreasonable searches and seizures. Second, the Due Process Clause contains a substantive component that bars certain arbitrary, wrongful government action 'regardless of the fairness of the procedures used to implement them.' *Daniels v. Williams*, 474 U.S. 327, 331 (1986). As to these two types of claims, the constitutional violation actionable under § 1983 is complete when the wrongful action is taken. . . . The Due Process Clause also encompasses a third type of protection, a guarantee of fair procedure. A § 1983 action may be brought for a violation of procedural due process, but. . .[i]n procedural due process claims, the deprivation by state action of a constitutionally protected interest in 'life, liberty, or property' is not in itself unconstitutional; what is unconstitutional is the deprivation of such an interest *without due process of law*. . . . The constitutional violation actionable under § 1983 is not complete when the deprivation occurs; it is not complete unless and until the State fails to provide due process.

*Zinermon v. Burch*, 494 U.S. 113, 125 (1990) (emphasis in original; citations and footnote omitted). In asserting a claim for deprivation of his First Amendment rights, Plaintiff has relied on the "incorporation" function of the Due Process Clause. He has not, however, alleged violations of substantive or procedural due process protections afforded by the Clause.

As to a potential substantive due process claim, recall that Plaintiff alleges that Defendants' conduct "deprived him of his liberty to practice his religion without government interference." (Docket #9 at 4). This is a restatement of Plaintiff's First Amendment free exercise claim as a violation of substantive due process principles. Yet, where a specific constitutional provision protects a certain right, a plaintiff may not bring an alternative claim that deprivation of that right is also a deprivation of substantive due process. *Albright v. Oliver*, 510 U.S. 266, 273 (1994). In other words, substantive due process is an inappropriate substitute for constitutional analysis where the Constitution directly addresses a subject. *See Koutnik v. Brown*, 456 F.3d 777, 781 (7th Cir. 2006); *Conyers*, 416 F.3d at 586. As a result, Plaintiff has not stated any actionable substantive due process claim.

The Court turns next to whether Plaintiff has stated a procedural due process violation. A procedural due process claim against a government official requires proof of inadequate procedures and interference with a protected liberty or property interest. *Kentucky Dept. of Corr. v. Thompson*, 490 U.S. 454, 460 (1989). In the prison context, protected liberty interests are quite limited. *See Wagner v. Hanks*, 128 F.3d 1173, 1176 (7th Cir. 1997). Pertinent to this case, "[a]lthough the due process clause of the Fourteenth Amendment requires prison officials to provide inmates with certain procedural

protections when a liberty interest is implicated, [prisoners] do not enjoy a liberty interest in obtaining satisfactory relief from the inmate complaint examiner or from other prison officials at subsequent levels of appeal." *Boribune v. Berge*, No. 04-C-0015-C, 2005 WL 840367, at *3 (W.D. Wis. Apr. 11, 2005).

Under these standards, Plaintiff states no procedural due process claim against any of the Defendants. As noted above, Plaintiff cannot form a procedural due process claim using his First Amendment free exercise right as the "liberty interest" which he was deprived of. *See Koutnik*, 456 F.3d at 781; *Becker v. Kroll*, 494 F.3d 904, 918–19 (10th Cir. 2007) (applying *Albright* to procedural due process violations). Nor does he have a liberty interest in the allegedly wrongful denial of his April 2016 inmate grievance. While prison officials may not prevent inmates from filing grievances or lawsuits, there is no allegation here that Defendants did so here; instead, Plaintiff appears to believe simply that they were wrong to deny him relief based on the grievance. That denial, and the affirmance of the denial on appeal, do not constitute violations of Plaintiff's due process rights. *See Strong v. David*, 297 F.3d 646, 650 (7th Cir. 2002) ("As long as [prison officials] did not deprive Strong of his opportunity to contest the merits of the charge before the grievance board or sabotage his chance to obtain redress in court, the defendants' uncooperative approach is not an independent constitutional tort; there is no duty to assist in an effort to obtain private redress.").

For the reasons stated above, the Court concludes that Plaintiff will be permitted to proceed only on the following claim: a First Amendment claim

Page 11 of 12

Case 2:16-cv-01518-JPS   Filed 01/17/17   Page 11 of 12   Document 10

against Donovan, Haese, and Eckstein for deprivation of the right to free exercise of Plaintiff's religion.

Accordingly,

**IT IS ORDERED** that Plaintiff's claim for violation of his due process rights under the Fourteenth Amendment be and the same is hereby **DISMISSED with prejudice**;

**IT IS FURTHER ORDERED** that Defendants Kelli West, Kelly Salinas, Alan DeGroot, and Cindy O'Donnell be and the same are hereby **DISMISSED** from this action;

**IT IS FURTHER ORDERED** that, pursuant to an informal service agreement between the Wisconsin Department of Justice and this Court, copies of Plaintiff's amended complaint (Docket #9) and this order will be electronically sent to the Wisconsin Department of Justice for service on Defendants Michael Donovan, Michelle Haese, and Scott Eckstein;

**IT IS FURTHER ORDERED** that, pursuant to the informal service agreement between the Wisconsin Department of Justice and this Court, those Defendants shall file a responsive pleading to the complaint within sixty (60) days of receiving electronic notice of this order; and

**IT IS FURTHER ORDERED** that a copy of this order be sent to the warden of the institution where the inmate is confined.

Dated at Milwaukee, Wisconsin, this 17th day of January, 2017.

BY THE COURT:

_____
J.P. Stadtmueller
U.S. District Judge