# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

| | |
|---|---|
| OUATI K. ALI,<br><br>                          Plaintiff,<br>v.<br><br>SCOTT ECKSTEIN, MICHELLE HAESE, and MICHAEL DONOVAN,<br><br>                        Defendants. | Case No. 16-CV-1518-JPS<br><br>**ORDER** |

## 1. INTRODUCTION

Plaintiff Ouati Ali ("Ali"), a prisoner at Green Bay Correctional Institution ("GBCI"), brought this action pursuant to 42 U.S.C. § 1983 against defendants Scott Eckstein ("Eckstein"), Michelle Haese ("Haese"), and Michael Donovan ("Donovan"), employees of GBCI, for a violation of his First Amendment rights. Specifically, Ali alleges that the defendants prevented him from fasting properly during Ramadan in 2016.

The defendants filed a motion for summary judgment, and the motion has been fully briefed. (Docket #24-32, #35-48). For the reasons stated below, the Court will grant summary judgment in favor of the defendants as to Ali's claims against Donovan and Eckstein but will deny their motion as to Ali's claim against Haese.

## 2. STANDARD OF REVIEW

Federal Rule of Civil Procedure 56 provides that the court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a); *see Boss v. Castro*, 816 F.3d 910, 916 (7th

Cir. 2016). A fact is "material" if it "might affect the outcome of the suit" under the applicable substantive law. *Anderson v. Liberty Lobby, Inc.*, 477 U.S. 242, 248 (1986). A dispute of fact is "genuine" if "the evidence is such that a reasonable jury could return a verdict for the nonmoving party." *Id.* The court construes all facts and reasonable inferences in the light most favorable to the non-movant. *Bridge v. New Holland Logansport, Inc.*, 815 F.3d 356, 360 (7th Cir. 2016). The court must not weigh the evidence presented or determine credibility of witnesses; the Seventh Circuit instructs that "we leave those tasks to factfinders." *Berry v. Chicago Transit Auth.*, 618 F.3d 688, 691 (7th Cir. 2010). The party opposing summary judgment "need not match the movant witness for witness, nor persuade the court that [his] case is convincing, [he] need only come forward with appropriate evidence demonstrating that there is a pending dispute of material fact." *Waldridge v. Am. Hoechst Corp.*, 24 F.3d 918, 921 (7th Cir. 1994).

3.     **RELEVANT FACTS**

Ali is an inmate in the custody of the Wisconsin Department of Corrections ("DOC"). He is an adherent of Islam. At all times relevant to this lawsuit, Ali was incarcerated at GBCI. Donovan was the chaplain at GBCI, Haese was the social services director, and Eckstein was the warden.

   3.1     **GBCI Policy Regarding Religious Dietary Observances**

At DOC institutions, including GBCI, religious diets are available to inmates whose religious beliefs require them to adhere to religious dietary laws. (Docket #37 at 2). For example, inmates who observe Ramadan, a Muslim holy month that includes daytime fasting, can sign up to receive meal bags to consume prior to dawn and after sunset. *Id.* at 2-4. Inmates can also sign up to participate in the Eid ul-Fitr meal, a feast celebrated at the end of Ramadan. *Id.* at 4-5.

Each year, the religious practices coordinator for DOC sends a memo to the institutions with dates for annual religious celebratory meals and multi-day religious observations. *Id.* at 5. This includes dates for Ramadan, which occurs during the ninth month of the Islamic lunar calendar. *Id.* Institutions are required to post the information from the memo in the chapel, and they may also post it in other places, such as the restrictive housing units or on facility televisions, at the discretion of the warden. *Id.* GBCI posts the memo in the chapel, library, and in the restrictive housing units. Prior to 2016, GBCI broadcasted the information on institution televisions as well, but it discontinued that practice before the events of this case took place. *Id.* at 5-6. Inmates can also request information about religious observance dates by writing to the chaplain. *Id.* at 7.

Pursuant to DOC policy, inmates must sign up to participate in Ramadan at least sixty days in advance to receive the multi-day religious meal accommodations. *Id.* at 4. Inmates at GBCI sign up for Ramadan by submitting a written request to Chaplain Donovan. *Id.* Donovan's practice is to retain inmates' requests for participation in Ramadan in order to double check the participant list prior to sending it to the food service department. *Id.* at 9. In 2016, Ramadan began on June 6, meaning that inmates were required to notify Donovan of their intent to participate by April 7. *Id.* at 8.

### 3.2 Ali's Request to Participate in Ramadan

Ali claims that he sent a request form to Donovan on April 1, 2016 asking that he be placed on the participation list for the Ramadan fast and that he be sent the additional form necessary to participate in the Eid ul-Fitr meal. *Id.* at 8. According to Ali, Donovan returned Ali's request form to him on April 4 along with the Eid ul-Fitr sign-up form. *Id.* Donovan does not

Page 3 of 16

recall ever receiving Ali's request or responding to it, but says that if he did receive it, he must have mistakenly overlooked the portion requesting to be placed on the Ramadan list. *Id.* at 8-10. Ali produced a copy of the alleged April 1 request form in opposition to summary judgment; it includes handwriting in the section for an official's response that reads "here is the form." (Docket #43 at 1-2). Donovan cannot confirm that the handwriting is his because he has no recollection of writing it. (Docket #28 at 5). The defendants concede that, for the purposes of summary judgment, the Court must accept Ali's assertion that he sent a timely sign-up request. (Docket #44 at 2).

Sometime soon after (Ali says April 5), Ali sent a request to Donovan asking why information about Ramadan had not been displayed on the institution televisions that year. (Docket #47 at 4). Then, sometime between April 10 and 13, after Ali learned that other inmates had received confirmation of their placement on the Ramadan participation list, Ali sent a second request form (without mentioning the first) to Donovan asking to be placed on the participation list. *Id.* at 4-5. On April 13 or 14, Ali received responses from Donovan to both of these inquiries stating that the April 7 deadline had passed and that "management" no longer allowed the information about Ramadan deadlines to be posted on the televisions. *Id.* at 5; *see also* (Docket #37 at 13).

On April 14, Ali encountered Donovan on his way to the dining facility. (Docket #47 at 6). Ali says he asked Donovan if he had been placed on the Ramadan participation list per his April 1 request. *Id.* Donovan told Ali he did not recall receiving the request and because Donovan had already turned over the final list to the kitchen staff, Ali would have to talk to Haese, Donovan's supervisor, to resolve the issue. *Id.*

On April 15, Ali wrote to Haese to inform her that many inmates were not able to sign up for the fast because there had been no television announcement about the deadline that year. *Id.* at 6-7. He attached his second (untimely) request to Donovan to be put on the list as well as his correspondence with Donovan about the deadline not being broadcasted on the institution televisions. *Id.* According to Ali, he also informed Haese, in a separate correspondence sent the same day, that he had timely submitted a sign-up request to Donovan and included his alleged April 1 request form. *Id.*[1] On April 16, Ali received a response from Haese in which she explained why GBCI did not broadcast information about Ramadan on the televisions that year. *Id.*

---

[1]Ali produced the alleged second letter to Haese, but it is not accompanied by any attachment. (Docket #43 at 20); *see also* (Docket #47 at 6-7). The letter states "Ms. Haese: I am forward my requests to Mr. Donovan with his responds in order for you to see that I had met the deadline for the Ramadan sign up." (Docket #43 at 20). The defendants say that Ali never sent this second letter to Haese, and therefore she was not aware that he had submitted a timely request to participate in Ramadan; she only knew of his untimely request. (Docket #47 at 6-7).

The defendants ask the Court to find that Ali's representations about the second letter contradict sworn statements in his amended complaint and should therefore be disregarded. (Docket #44 at 4-5). In his amended complaint, Ali states that on April 15, 2016 he sent Haese "an Interview/Information Request attached with Donovan's response." (Docket #9 at 5). This statement does not disavow a second letter. In other words, it is not necessarily contradictory for Ali to swear that he sent letter A and then later swear that he sent letters A and B. This amounts to a disputed material fact. The defendants will be free to argue to a jury about the inconsistencies in Ali's averments. *See Berry*, 618 F.3d at 691 ("[W]e long ago buried—or at least tried to bury—the misconception that uncorroborated testimony from the non-movant cannot prevent summary judgment because it is 'self-serving.' If based on personal knowledge or firsthand experience, such testimony can be evidence of disputed material facts. It is not for courts at summary judgment to weigh evidence or determine the credibility of such testimony; we leave those tasks to factfinders.") (internal citations omitted).

On April 18, Ali wrote to Haese again, this time asking that the document attached to his first correspondence to her be returned to him. *Id.* at 9. Haese wrote back on April 23, stating "Yes—Also I am working on your requests—please remain patient as I will have some resolve shortly." *Id.* at 11.

### 3.3 Ali's Inmate Complaint Regarding Ramadan

On April 18, Ali filed a grievance with the institution complaint examiner ("ICE") about not being placed on the Ramadan list. *Id.* at 9. In his grievance, Ali states the he submitted to Donovan timely sign-up requests on April 1 and April 5, and that he attempted to resolve the issue by contacting Haese but she had not responded. (Docket #30-2 at 19-20). On May 10 or 11, the ICE recommended dismissal of the grievance because, according to Haese, Ali did not show that he had submitted a timely sign-up request. *Id.* at 9-10. The ICE also said Ali could fast on his own without the provision of morning and evening meal bags by purchasing food items from the canteen or saving food from his daytime meals. *Id.* Eckstein approved the dismissal. *Id.* at 11.

On May 12, Ali appealed the dismissal to the corrections complaint examiner ("CCE"). In the appeal, Ali states that he timely requested placement on the Ramadan list and attaches as proof his alleged April 1 correspondence to Donovan. (Docket #30-2 at 18-19). Notably, the April 1 request form attached to his appeal does not include handwritten language in the space for the official's response. Instead, that space is devoid of any type or handwriting and is instead filled by a CCE date-stamp of May 20, 2016. The CCE dismissed Ali's appeal. *Id.* at 17.

According to Ali, on or after June 1 (after he submitted his CCE appeal, which included a copy of the alleged April 1 request), he finally

received back from Haese one of the two documents he supposedly sent to her on April 15. (Docket #47 at 15). Ali describes the returned document as "my initial request dated April 1, 2016, [to] which Donovan had responded with: 'here is the form' and dated April 4, 2016." (Docket #42 at 6); *see also* (Docket #37 at 8-9).

That document, which Ali produced to the defendants during discovery and filed with the Court in opposition to summary judgment, is ostensibly the same document that he submitted to the CCE with his appeal. But, as noted earlier, the version Ali produced during this litigation is notably different. In the space for the official's response, there appears handwriting stating "here is the form."[2]

### 3.4 Ali Questions Eckstein about Broadcasting the Ramadan Dates and Deadlines

On or around April 22, Ali says he and two other inmates encountered Eckstein and the GBCI security director while on their way to the dining facility. (Docket #47 at 9-10). Ali asked why GBCI did not broadcast an announcement about Ramadan that year and informed Eckstein that he had signed up in time but had not yet been placed on the participation list. *Id.* Ali does not claim to have asked for Eckstein's help to ensure his name was put on the list. Eckstein said he would investigate with Donovan and Haese the issue of the policy change regarding the broadcast

---

[2]The Court harbors concern about the possibility that Ali fabricated some of the material evidence in this case, but it cannot say on the record before it that Ali's evidence—specifically, the April 1 request and the letter to Haese attaching the April 1 request—is inauthentic. *See Scott v. Edinburg,* 346 F.3d 752, 759–60 & n.7 (7th Cir. 2003) (Documents submitted in support of a summary judgment motion must be authenticated in order to be admissible); Fed. R. Evid. 901(b)(1) (A document can be authenticated with testimony of a witness with knowledge). Ali's credibility, including the credibility of his averment that his evidence is authentic, is for a jury to weigh.

of Ramadan dates and deadlines. *Id.* at 11. Ali did not hear anything further from Eckstein after that conversation. *Id.*

### 3.5 Ali's Attempted Fast

Ali attempted to participate in the 2016 Ramadan fast on his own but was unsuccessful. (Docket #47 at 16). He claims that he could not afford canteen items to eat outside of daylight hours and his spiritual experience was diminished. *Id.*; *see also* (Docket #36 at 17 and #43 at 17-19).

### 4. ANALYSIS

Ali alleges that defendants Donovan and Haese deprived him of the First Amendment right to the free exercise of his religion by preventing him from participating in the 2016 Ramadan meal bag program at GBCI. He alleges that Eckstein violated his free exercise right by changing GBCI's policy of broadcasting the dates and deadlines for Ramadan on the institution televisions.

The defendants oppose these claims on their merits, arguing that they fail as a matter of law. The defendants also request qualified immunity, which the Court will consider only as to the claim that does not fail on its merits. Finally, the defendants ask the Court to find that Ali is not entitled to recover compensatory or punitive damages.

### 4.1 Participation in Ramadan Meal Bag Program

To survive summary judgment, Ali must proffer evidence from which a jury could reasonably find that the defendants "intentionally and substantially interfere[d] with [his] ability to practice his faith" and the restriction was not "reasonably related to a legitimate penological interest." *Garner v. Muenchow*, No. 16-3707, 2017 WL 5172142, at *2 (7th Cir. Nov. 8, 2017) (citing *Turner v. Safley*, 482 U.S. 78, 89 (1987)). A substantial interference, or burden, equates to "pressure on an adherent to modify his

behavior and to violate his beliefs." *Thompson v. Holm*, 809 F.3d 376, 379 (7th Cir. 2016) (quotation omitted).

The defendants do not argue that Ali was prevented from participating in the meal bag program for some legitimate penological reason. Instead, they argue, first, that they did not "intentionally" interfere with his ability to practice his faith because he was left off the Ramadan participation list by mistake, and, second, he did not face a "substantial" burden because he could have fasted on his own.

As to the latter argument, the Seventh Circuit has found that denial of meal bags during Ramadan is a substantial burden on a Muslim's free exercise rights. *Id.* at 380 ("Without the meal bags [for two days], Thompson was forced to choose between foregoing adequate nutrition or violating a central tenant of his religion."). In this case, where the parties agree that Ali did not receive meal bags for the entire month of Ramadan in 2016, there can be no serious dispute that he faced a substantial burden on the exercise of his faith.

But Ali must also show that the defendants "intended to prevent [him] from practicing" his religion. *Garner*, 2017 WL 5172142, at *2. On this issue, *Garner* provides a helpful comparator. The plaintiff inmate in that case had been placed in segregation where he did not have access to his prayer items. *Id.* at 1. He was allowed only to borrow a Quran from the chapel or use an approved catalog to buy from an outside vendor the religious items he needed for praying. *Id.*

The plaintiff sought a catalog by writing to the defendant unit manager six times but never received a response. *Id.* The unit manager knew the catalogs were in short supply, but he did not tell that to the plaintiff. *Id.* Eventually the unit manager sent the plaintiff on a "wild goose

chase" for a catalog, but everyone to whom the plaintiff turned was unhelpful. *Id.* Finally learning that catalogs were unavailable, the plaintiff wrote to the defendant chaplain to request use of a Quran, and the chaplain refused to provide one. *Id.* at 2. Instead, the chaplain directed the plaintiff back to the unit manager to request a catalog. *Id.* At this point, three months had gone by and the plaintiff was soon released from segregation, never having received any prayer items. *Id.*

The court found that a trier of fact could reasonably believe that the unit manager intended to prevent the plaintiff from practicing his religion because the unit manager "knew that [the plaintiff] wanted a catalog and knew that they were unavailable," but "chose *not* to tell [the plaintiff] that the catalogs were unavailable (or try to resolve the shortage) and thereby willfully deprived [the plaintiff] of the chance to seek another option for his religious exercise." *Id.* As to the chaplain, the court found that a factfinder could conclude that he, too, intentionally prevented the plaintiff's practice of his faith because he knew of the plaintiff's desire to use a religious text, as allowed under the prison policy, but ignored the plaintiff's request. *Id.*

Here, Ali has not shown that defendant Donovan intentionally prevented him from exercising his faith. Ali admits in his brief opposing summary judgment that "the initial act by Chaplain Donovan in not placing Ali on the list for Ramadan participants may [have] been a mistake." (Docket #36 at 5). This is consistent with Donavon's own testimony, as he claims that if he did receive a timely sign up request on April 1, he must have mistakenly misread the request. (Docket #28 at 5-6). Ali also agrees that he sent his second request to Donovan after the deadline, and that it did not mention the first request. (Docket #37 at 11-12). Finally, when Ali confronted Donovan *en route* to the dining facility and, for the first time, put

Donovan on notice that he had indeed timely submitted a sign-up request, Donovan directed Ali to speak with the person who could remedy the problem, Haese. *Id.* at 9.

Unlike the defendant unit manager in *Garner*, Donovan did not ignore the plaintiff's request; as soon as he had knowledge of Donovan's (timely) request, Donovan provided Ali with direction on the appropriate avenue for securing a place on the participation list. Further, unlike the defendants in *Garner*, Donovan had no reason to suspect that the route he advised Ali to take—writing to Haese—would not resolve the problem. Ali told Donovan that he had a copy of the alleged April 1 request and Donovan's response thereto, so Ali was equipped with the information necessary to show Haese, the person with authority to adjust the participation list, that he deserved to be included. Even assuming all inferences in Ali's favor, no reasonable jury would find that Donovan intentionally violated Ali's free exercise rights. At most, Ali has shown that Donovan acted with negligence, and that is insufficient to prove his claim. *See Daniels v. Williams*, 474 U.S. 327, 328 (1986). The Court will grant summary judgment as to Ali's claim against Donovan.

The same cannot be said for Haese. The record, viewed in Ali's favor, shows that Ali was told that Haese was the person with authority to add him to the Ramadan list, and Ali submitted to Haese a request to be added along with proof of his timely request to Donovan. As noted above, the defendants swear that Ali never made Haese aware that he had submitted a timely request, and that she only knew of his untimely request. But Ali swears the opposite is true, and although "[d]efeating summary judgment requires more than just a swearing match," Ali has also presented "some evidence that a genuine issue of material fact exists." *Matter of Wade*, 969

F.2d 241, 245 (7th Cir. 1992). Ali presented a declaration based on personal knowledge as well as a copy of the alleged request to Haese informing her that he should have been placed on the list. Further, Haese's last communication to Ali included a promise that she was "working on [his] requests" and to "please remain patient as [she] will have some resolve shortly." (Docket #47 at 11). Indeed, the defendants concede that "[h]ad Ali told Haese that he submitted a timely request and Donovan nevertheless left him off the list, Haese would have been made aware of the problem." (Docket #44 at 3). Viewing the evidence in Ali's favor, this is exactly what happened. A reasonable jury could find that Haese knew Ali wanted to participate in Ramadan and had timely complied with the sign-up requirement, but then chose to leave him off the list anyway.

For that reason, Haese is also not entitled to qualified immunity at this juncture. The doctrine of qualified immunity protects government officials "from liability for civil damages insofar as their conduct does not violate clearly established statutory or constitutional rights of which a reasonable person would have known." *Pearson v. Callahan*, 555 U.S. 223, 231 (2009) (citing *Harlow v. Fitzgerald*, 457 U.S. 800, 818 (1982)). The defendants couch the issue of qualified immunity as to Haese in the wrong way; they argue that Haese only had "tangential involvement" in Ali's attempt to secure placement on the Ramadan list and that she had no way of knowing that "abiding by a reasonable policy" can constitute a constitutional violation. (Docket #25 at 24 and #44 at 7). But, as explained above, Ali has proffered evidence that Haese knew Ali should have been placed on the Ramadan participation list, had authority to put him there, and intentionally refused to do so. As the Seventh Circuit has made clear, a prisoner has a clearly established right to a diet consistent with the tenets

of his professed religion, and "forc[ing] him to choose between his religious practice and adequate nutrition" violates that clearly established right. *Thompson*, 809 F.3d at 381. Thus, based on the facts currently in the record, Haese is not entitled to qualified immunity.

The Court is constrained to deny summary judgment as to Ali's claim against Haese.

### 4.2   Policy Regarding Television Broadcast of Ramadan Dates

Ali's free exercise claim against Eckstein is based on Eckstein's decision, as the warden, to discontinue GBCI's practice of notifying inmates by television broadcast of the date Ramadan would begin and the deadline for inmates to sign up to receive Ramadan meal bags.

The defendants argue that the change in notification procedure for Ramadan in 2016 was "neutral and of general applicability," (Docket #25 at 12-14), and therefore does not violate the First Amendment. *See Church of the Lukumi Babalu Aye, Inc. v. City of Hialeah*, 508 U.S. 520, 531 (1993) ("[A] law that is neutral and of general applicability need not be justified by a compelling governmental interest even if the law has the incidental effect of burdening a particular religious practice.").

The Court need not decide whether this is true because Ali's claim against Eckstein fails for another reason. Ali's own evidence demonstrates that his alleged injury was not caused by Eckstein's policy change. To recover under Section 1983—in either an individual or official capacity claim against Eckstein—Ali must present evidence of a causal link between his injury and Eckstein's conduct. *See Hill v. Shelander*, 924 F.2d 1370, 1372 (7th Cir. 1991) ("To establish *personal* liability in a Section 1983 action," the plaintiff must show that the official "caused the deprivation of a federal right.") (internal quotation omitted); *see also Thomas v. Cook Cnty. Sheriff's*

*Dep't*, 604 F.3d 293, 306 (7th Cir. 2010) (in Section 1983 claims against governmental bodies, "we have always required plaintiffs to show that their injuries were caused by the policies or practices complained of.") (citation omitted). It is undisputed that, despite the policy change regarding broadcast of the Ramadan sign-up deadline, Ali knew the deadline and submitted a timely sign-up request. (Docket #47 at 1-2). Ali's claimed injury—not receiving meal bags during Ramadan in 2016—was not caused by Eckstein's decision to change the way GBCI notified inmates of the Ramadan sign-up deadline. The defendants' motion for summary judgment as to Eckstein will be granted.

5.  **DAMAGES**

Finally, Ali states in his second amended complaint that he seeks to recover $75,000 against each defendant in punitive damages and $1,300 in compensatory damages. (Docket #17 at 9). The defendants argue that even if Ali proves a constitutional violation, he is entitled to recover only nominal, not compensatory or punitive, damages.

The Prison Litigation Reform Act precludes a prisoner from recovering compensatory damages for mental or emotional injuries "without a prior showing of physical injury[.]" 42 U.S.C. § 1997e(e). However, if a prisoner proves a constitutional violation and "some other type of non-physical injury, the statute would not foreclose recovery, assuming that the damages sought were not 'for' any mental or emotional injuries suffered." *Calhoun v. DeTella*, 319 F.3d 936, 940 (7th Cir. 2003) (citation omitted); *see also Rowe v. Shake*, 196 F.3d 778, 781–82 (7th Cir. 1999) ("A prisoner is entitled to judicial relief for a violation of his First Amendment rights aside from any physical, mental, or emotional injury he may have sustained.").

Ali claims to have suffered mental and emotional injuries, *see* (Docket #17 at 9 and #42 at 6-7), but he has not presented evidence that he suffered a physical injury. In his brief opposing summary judgment, Ali states that "there is plenty [of] evidence of physical injury, which upon a jury trial Ali's legal counsel will be permitted to obtain documents from Green Bay Corrections Psychological Unit showing the injury." (Docket #36 at 20). This is too little too late. If evidence of Ali's alleged physical injury exists, he should have used the discovery process to obtain it and present it in opposition to summary judgment. *See Goodman v. Nat'l Sec. Agency, Inc.*, 621 F.3d 651, 654 (7th Cir. 2010) ("We often call summary judgment, the 'put up or shut up' moment in litigation . . ., by which we mean that the non-moving party is required to marshal and present the court with the evidence [he] contends will prove [his] case.") (internal citations omitted). Compensatory damages are therefore not available in this case.

However, punitive damages are recoverable under Section 1983 even in the absence of compensatory damages "where the jury concludes that the defendant's conduct was 'motivated by evil intent or involv[ed] reckless or callous indifference to the federally-protected rights of others.'" *Siebert v. Severino*, 256 F.3d 648, 655 (7th Cir. 2001) (quotation omitted). As discussed above, Ali's evidence, construed favorably to him, supports the inference that Haese acted intentionally, and that is sufficient to refute the defendants' contention that punitive damages are unavailable. *Thompson*, 809 F.3d at 381.

Therefore, if a trier of fact credits Ali's evidence that Haese intentionally violated his rights, he may receive both nominal ($1.00) and punitive damages against her. *Id.*

**6. CONCLUSION**

Ali has failed to proffer evidence raising triable issues of fact as to his First Amendment claims against Donovan and Eckstein. Rather, on the undisputed facts and evidence in the record, the Court must grant judgment as a matter of law as to those claims. However, Ali has raised a triable issue of fact as to his First Amendment claim against Haese. The Court is constrained to deny the defendants' motion for summary judgment on that claim. Ali is entitled to pursue nominal and punitive damages against her. A jury trial will be scheduled by separate order.

Accordingly,

**IT IS ORDERED** that the defendants' motion for summary judgment (Docket #24) be and the same is hereby **GRANTED in part** as to the plaintiff's claims against defendants Donovan and Eckstein and **DENIED in part** as to the plaintiff's claim against defendant Haese;

**IT IS FURTHER ORDERED** that the plaintiff's claims against defendants Donovan and Eckstein be and the same are hereby **DISMISSED with prejudice;** and

**IT IS FURTHER ORDERED** that defendants Donovan and Eckstein be and the same are hereby **DISMISSED from this action**.

Dated at Milwaukee, Wisconsin, this 13th day of March, 2018.

BY THE COURT:

J.P. Stadtmueller
U.S. District Judge